UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KENDRICK DAMON THOMAS

                                                              CIVIL ACTION

VERSUS

                                                              NO. 15-2-EWD

COMMISSIONER OF SOCIAL SECURITY


**RULING AND ORDER**[1]

Plaintiff, Kendrick Damon Thomas ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income.[2]  The Commissioner has filed an Opposition.[3]

For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.[4]

**I.      Procedural History**

Plaintiff filed an application for Supplemental Security Income ("SSI") on June 20, 2012 alleging disability beginning September 15, 2006.[5]  Specifically, Plaintiff alleged he was disabled due to bipolar disorder, mild schizophrenia, manic depression, and manic episodes.[6]  Plaintiff's

---

[1] References to documents filed in this case are designated by "R. Doc. [page number(s)]."  References to the record of administrative proceedings filed in this case are designated by "AR [page number(s)]."

[2] AR pp. 96-102.

[3] R. Doc. 26.  On May 23, 2016, this court ordered Plaintiff to submit a Motion for Leave to Submit an Untimely Memorandum in Support of Appeal.  R. Doc. 19.  This court further ordered the Commissioner to file an opposition within sixty (60) days after the filing of Plaintiff's Motion for Leave and granted leave to Plaintiff to file a reply twenty (20) days thereafter.  R. Doc. 19.  This court noted that upon the expiration of the time period for filing a reply, this matter would be considered submitted without regard to whether a reply had been filed.  R. Doc. 19.  The Commissioner filed its opposition on August 23, 2016. Plaintiff did not file a reply.

[4] The parties consented to proceed before a United States Magistrate Judge.  R. Doc. 9.  The case was therefore transferred to this court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).  R. Doc. 10.

[5] AR pp. 96-102.

[6] *See*, AR p. 37.

claim was initially denied,[7] and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[8]  On August 28, 2013, a hearing was held at which Plaintiff and his aunt, Patrice Thomas, testified.[9]  On December 11, 2013, an unfavorable decision was rendered by the ALJ.[10]  On November 26, 2014, the Appeals Council of the Office of Disability Adjudication and Review (the "Appeals Council") denied Plaintiff's request for review of the ALJ's decision.[11]  Accordingly, Plaintiff exhausted his administrative remedies before filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.

## II.      Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner's denial is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.  *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.  *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

---

[7] AR pp. 48-51.

[8] AR p. 53.

[9] AR pp. 24-36.  The hearing was originally scheduled on July 3, 2013.  AR 67-77.  However, the hearing was rescheduled at Plaintiff's request based on his explanation that he was in "the State Mental Hospital in Jackson, LA" and would not be discharged by July 3, 2013.  AR p. 79.  Plaintiff waived his right to representation at the August 28, 2013 hearing.  AR p. 93.

[10] AR pp. 10-20.

[11] AR pp. 1-4.

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

## III.    The Commissioner's Determination

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. "The law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five-step sequence used to evaluate claims the

3

Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four steps then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).

Here, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since June 20, 2012, the date Plaintiff's application was filed.[12] At steps one and two of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 20, 2012 (the date of Plaintiff's application) and that Plaintiff suffered from the severe impairments of schizophrenia, in partial remission and marijuana dependence.[13] At step three, the ALJ found that the severity of Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the criteria for the following listed impairments: 12.03 *Schizophrenic,*

---

[12] AR p. 13. A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled. *Brown v. Apfel*, 192 F.3d 492, 495 n. 1 (5th Cir. 1999); 20 C.F.R. § 416.335. "Thus, the month following an application fixes the earliest date from which SSI benefits can be paid." *Clarke v. Astrue*, 2013 WL 105017, at * 4 (S.D. Tex. Jan. 8, 2013).

[13] AR p. 15.

*Paranoid and other Psychotic Disorders*; 12.04 *Affective Disorders*; and 12.09 *Substance Addiction Disorders*.[14]  The ALJ then found that Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple tasks and has the capability of interacting with others.  He is able to perform simple, unskilled work on a sustained basis."[15]  The ALJ found that Plaintiff would be considered a younger individual under the regulations, had at least a high school education, and is able to communicate in English.[16]  At step four, the ALJ then determined that transferability of job skills was not at issue because Plaintiff had no past relevant work.[17]  Finally, based on Plaintiff's RFC, the ALJ determined at step five of the analysis that a significant number of jobs exist in the national economy that Plaintiff can perform.[18]  In making his step five findings, the ALJ relied on section 204.00 of the Medical-Vocational Guidelines as a framework and explained that while Plaintiff's "ability to perform work at all exertional levels has been compromised by non-exertional limitations," such limitations "have little or no effect on the occupational base of unskilled work at all exertional levels."[19]  The ALJ reasoned that Plaintiff's "non-exertional limitations…have no significant adverse effect on [the] unskilled occupational base, and the Commissioner may use the medical vocational guidelines in discharging his burden,

---

[14] AR pp. 15-16.

[15] AR pp. 16-19.

[16] AR p. 19.

[17] AR p. 19.  Under the regulations, when a claimant has no past relevant work, the ALJ proceeds to step five.  20 C.F.R. § 404.1520(g)(1) ("If we find that you cannot do your past relevant work because you have a severe impairment(s) (or you do not have any past relevant work), we will consider the same residual functional capacity assessment…, together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work….").

[18] AR pp. 19-20.

[19] AR p. 19.

without additional input from a vocational expert."[20]   Accordingly, the ALJ concluded that

Plaintiff was not disabled since June 20, 2012, the date of Plaintiff's application.[21]

### IV.      Plaintiff's Allegations of Error

Plaintiff's appeal raises three main allegations of error.  First, Plaintiff argues that the

ALJ's RFC determination was not based on substantial evidence.[22]   Second, Plaintiff asserts that

the ALJ's conclusion that his non-exertional impairments had little to no effect on the occupational

base of unskilled work is not based on substantial evidence.[23]   Third, Plaintiff argues that the ALJ

erred in failing to find that his impairments met or medically equaled Listing 12.02 *Organic Mental*

*Disorders* ("Listing 12.02").[24]   Because this court finds that Plaintiff's second allegation of error

has merit, it does not rule on Plaintiff's arguments regarding the ALJ's RFC determination or

Plaintiff's assertion that he meets or medically equals Listing 12.02.

---

[20] AR p. 20.

[21] AR p. 20.

[22] R. Doc. 22 pp. 4-9.

[23] R. Doc. 22 pp. 9-12.

[24] R. Doc. 22 pp. 12-18.  Plaintiff contends that the "ALJ erred in failing to find that plaintiff had an impairment that met or was medically equal in severity to one of the Listings related to mental illness" and specifically argues that the requirements of Listing 12.02 are met.  R. Doc. 22, pp. 12 & 13.  In addition to other requirements, Listing 12.02 requires a showing of at least two of the following category B criteria: (1) marked restrictions in daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; or (4) "repeated episodes of decompensation, each of extended duration."  The court notes that the ALJ's opinion considered the Listing requirements of, *inter alia*, 12.03, which specifically addresses schizophrenic disorders and includes the same "category B" criteria as set forth in Listing 12.02.  The ALJ's assessment of the category B criteria in conjunction with Listing 12.03 appears to be based on the mild and moderate limitations in these categories as noted by Dr. Burnett.  AR p. 40.  Plaintiff "has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the listings."  *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016).  While Plaintiff contends that his medical records support findings of marked restrictions in the areas of daily living, social functioning, and the ability to maintain concentration, persistence, or pace, Plaintiff fails to point to any medical opinion evidence stating that he actually has "marked" limitations in the category B criteria.

V.      **Analysis**

A.  **The ALJ's Determination that Plaintiff's Non-Exertional Impairments Do Not Effect the Occupational Base Without Use of a Vocational Expert Constituted Legal Error**

As noted above, although the ALJ found that Plaintiff's "ability to perform work at all exertional levels has been compromised by non-exertional limitations," he went on to find that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels."[25] The ALJ then used section 204.00 of the Medical Vocational Guidelines (the "Grids")[26] as a framework and reasoned that because Plaintiff's non-exertional limitations had "no significant adverse effect on [the] unskilled occupational base," the Grids could be used without additional input from a vocational expert in discharging the Commissioner's burden at step five of the analysis to show "that other work exists in significant numbers in the national economy that the claimant can do" in light of Plaintiff's RFC, age, education, and work experience.[27]

"[T]he Secretary bears the burden at the fifth step of establishing that the claimant is capable of performing work in the national economy." *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir.

---

[25] AR p. 19.

[26] Section 204.00 addresses "maximum sustained work capacity limited to heavy work (or very heavy work) as a result of severe medically determinable impairment(s)" and provides:

> The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work – either of which would have already provided a basis for a decision of "not disabled." Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

[27] AR p. 20.

7

2000).  The Fifth Circuit has explained that "'[u]se of the 'Grid Rules' is appropriate when it is established that a claimant only suffers from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Id*. at 398. "Otherwise, the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  *See also*, 20 C.F.R., Part 404, Subpt. P, App. 2, §200.00(e) ("Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, *e.g.*, mental, sensory, or skin impairments."); 20 C.F.R., Part 404, Subpt. P, App. 2, §200.00(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) ("When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations,…Subpart P., App. 2, and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform.").

The Fifth Circuit has held that "[a]n ALJ's finding of a severe non-exertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five."  *White v. Astrue*, 239 Fed. Appx. 71, 73 (5th Cir. 2007) (citing *Hearne v. Barnhart*, 111 Fed. Appx. 256, 257-258 (5th Cir. 2004) (a finding of severe depression at step two prevented application of the Grid Rules alone to satisfy the Commissioner's step five burden)).  *See also*, *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) ("Fields correctly asserts that the guidelines may not be applied when a claimant suffers solely from a nonexertional impairment."); *Newton v. Apfel*, 209 F.3d 448, 458

(5th Cir. 2000) ("If impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that the claimant can perform. *See*, *Fraga*, 810 F.2d at 1304. If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy."); *Pate v. Heckler*, 777 F.2d 1023, 1026 (5th Cir. 1985) ("As [claimant] points out, and the Secretary concedes, the Secretary may not apply the guidelines in a case involving solely non-exertional impairments."). *See also*, *Pearson v. Colvin*, 2014 WL 4425803, at * 6 (M.D. La. Sept. 8, 2014) (remanding where ALJ's step two finding that claimant's mental impairments were non-severe was not supported by substantial evidence and explaining that "the record does support the existence of non-exertional limitations that were not included in the RFC and would prevent use of the Medical Vocational Guidelines at step five."); *Benoit v. Astrue*, 2007 WL 5511504, at * 6 (E.D. La. Dec. 19, 2007) ("because plaintiff's severe impairments are solely nonexertional, the ALJ is prevented from using the Grids in this case."). "It is considered internally inconsistent for the ALJ to find a nonexertional impairment is severe at Step Two and then find, at Step Five, the Grids are applicable because the claimant does not have any nonexertional impairments significantly affecting the claimant's RFC." *Milligan v. Colvin*, 2013 WL 5345842, at * 4 (N.D. Tex. Sept. 24, 2013) (collecting cases).

In this case, the ALJ found at step two of his analysis that Plaintiff suffered from the severe impairments of "schizophrenia, in partial remission and marijuana dependence."[28] However, at step five the ALJ found that Plaintiff's non-exertional impairments "have little to no effect on the

---

[28] AR p. 15.

occupational base of unskilled work at all exertional levels"[29] such that the Commissioner's burden could be discharged by showing there were a significant number of jobs in the economy that Plaintiff could perform by relying solely on the medical vocational guidelines without additional input from a vocational expert.[30]   Because the ALJ relied solely on the Grids in his step five analysis after finding the Plaintiff suffered from severe non-exertional impairments at step two, the ALJ committed legal error and remand is appropriate.  *Milligan*, 2013 WL 5345842, at * 6 ("In choosing to rely exclusively on the Grids, the ALJ committed legal error.  Moreover, because the only support for the ALJ's determination was the improperly applied Grids, the determination cannot be said to have substantial support.").  *See also*, *Harris v. Barnhart*, 204 Fed. Appx. 447, 449 (5th Cir. 2006) ("If…the claimant suffers from nonexertional impairments, the Commissioner must rely on a VE to establish that suitable jobs exist in the economy.  Harris suffers from paranoid schizophrenia, a severe nonexertional impairment, and thus not only was the ALJ within his discretion to rely on the VE, but he was required to do so."); *Hodges v. Calvin*, 2016 WL 783080, at * 8 (S.D. Miss. Feb. 2, 2016) ("Plaintiff's depression was found to be a severe nonexertional impairment at step two.  Accordingly, 'not only was the ALJ within his discretion to rely on the [vocational expert], but he was required to do so.'") (quoting *Harris v. Barnhart*, 204 Fed. Appx. 447, 449 (5th Cir. 2006)).

Because this court finds that the ALJ committed legal error requiring reversal and remand when he determined that Plaintiff's non-exertional limitations did not affect the occupational base

---

[29] AR p. 19.

[30] AR pp. 19-20.

without consultation with a vocational expert, this court does not reach Plaintiff's arguments regarding the ALJ's RFC determination[31] or Listing 12.02.

## VI. Conclusion

For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.

Signed in Baton Rouge, Louisiana, on September 23, 2016

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[31] Plaintiff argues that the RFC is not supported by substantial evidence. He specifically asserts that the opinion of Dr. Terrell, who performed a consultative examination, is inconsistent with the RFC and that records from Drs. Wade and Hale, who later determined Plaintiff was incompetent to stand trial, as well as medical records from Eastern Louisiana Mental Health Hospital ("ELMHH") related to Plaintiff's admission for competency restoration provide a bases for rejection of the RFC. *See*, R. Doc. 22 pp. 5-8. To the extent Plaintiff asserts Dr. Terrell's opinion is internally inconsistent, this court notes that Dr. Terrell stated that Plaintiff "is able to maintain attention to perform simple and complex tasks for two hour blocks of time" but also opined that Plaintiff "may have difficulty sustaining effort and persisting at a normal pace over the course of a routine 40 hour work week." AR p. 224. The court does not view these statements as necessarily contradictory and this assessment seems to be consistent with Dr. Burnett's observations at the initial disability determination level. *See*, AR pp. 41 & 43 (noting that Plaintiff "will have some difficulty sustaining effort and persisting at a normal pace over the course of a 40 hour work week" but that Plaintiff "is capable of performing and remaining on tasks requiring low stress demands."). While not ruling on the issue, the court notes that such evidence provides support for the ALJ's RFC. However, the court further notes that the ALJ's RFC was based on Plaintiff's adherence to an established treatment plan, but Plaintiff's ability to comply with a treatment regime was not directly considered or addressed by the ALJ. *See*, *LeDoux v. Colvin*, 2015 WL 5636414, * 10 (M.D. La. Aug. 31, 2015) (instructing the ALJ on remand to "consider whether Plaintiff's noncompliance with prescribed treatments results from her mental impairments.") (citing, *inter alia*, *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (ALJ erred by relying on evidence that claimant could work when she took her medicine where ALJ failed to consider that "mental illness in general…may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment.")); *Clark v. Astrue*, 2013 WL 105017 (S.D. Tex. Jan. 8, 2013) (remanding case where ALJ's RFC "was dependent upon [plaintiff's] compliance with medical treatment" but ALJ failed to evaluate "the impact of [plaintiff's] mental impairments on his compliance with prescribed treatment"); *Brashears v. Apfel*, 73 F.Supp.2d 648 (W.D. La. 1999) (remanding where ALJ found plaintiff diagnosed with chronic paranoid schizophrenia "functions quite well as long as she takes medication" but there was not "evidence in the record as to whether Plaintiff does not take medicine because of rational choice or even mere neglect committed while in a treated state, or whether the non-compliance is caused by the psychotic symptoms themselves.").